MaeviN 'J.
This Í3 a proceeding in error seeking to reverse the judg *351 ment of the court of common pleas of this county, in a proceeding tried in that court upon appeal from the probate .court.
The proceeding arose in the probate court upon exceptions filed by the plaintiff in error to the several accounts filed in the last named court by the defendants in error, as executors of the last will and testament of Blbridge 0. Warner, deceased, who was the father of all the parties to this action.
The issues in the court of common pleas were tried to the court, the case being one not triable by a jury. After the decision was made in that court, and within the time provided by' law, a motion for a new trial was filed, which was overruled by the court. A bill of exceptions, embodying all of the evidence in the case, was duly allowed and signed, a petition in error was duly filed, and we are called upon to determine whether any error was' committed by the court of common pleas to tüe prejudice of this plaintiff in error entitling her to a reversal of the judgment.
On the —'day of March, 1884, Blbridge 0. Warner died testate. His will, which was duly admitted to probate, was executed on the 19th day of January, 1882, and the codicil to such will, which was also admitted to probate, was executed on the 21st day of January, 1884. A copy of this will and codicil constitutes a part of the evidence contained in this bill of exceptions, and, in another action brought for that purpose, this court has construed its provisions, so far as they relate to any matter pertaining to the questions involved here,
At the time of his death Warner left a widow, Marian E. Warner, who is the mother of the plaintiff, in error, and he left three children, to-wit: the parties to this suit, the de- ’ fendants in error not being the children of the widow already named. Bequests were made in the will to each of 4hese members of his family. The plaintiff in error being *352 named as Marjorie O. Warner, her present name of Rote being that of her husband, to whom she was married years-after the death of her father.
The fourth item of the testator’s will, so far as it refers-to the controversy here, reads:
“I do also give and bequeath to my said wife,, in trust for my said daughter Marjorie 0. Warner until my said daughter arrives at maturity, the sum of ten thousand dollars, payable as follows: 20 shares of the capital stock of the First National Bank of Painesville, Ohio, $2,000.00. One thousand dollars in Lake Shore & Michigan Southern, Railway Company at par, $1,000,00, Seven thousand dollars in money or in good well secured notes, $7,000.00.”
Aggregating ten thousand dollars.
In the case already referred to, we have just held at the present term that this is to be treated either as a demonstrative or a general bequest of ten thousand dollars, and that no one of the items specified, as being used to pay the' same, constituted a specific legacy, and that if, at the time of the death of the testator, he was not the owner of all of' these several items, then the item or items so wanting must be made good in money or its equivalent.
On the part of the plaintiff in error it is insisted that at the time the testator died he owned neither bonds, stocks or other property connected in any way with the Lake Shore Michigan Southern Railway Company, which could have' been intended by the second description of property named in this fourth item of the will.
The evidence establishes that if he did then own any such property, it consisted of two seven per cent, coupon bonds, issued by that company, each for five hundred dollars, and numbered respectively'312 and 393. It is certain that prior to December 20th, 1878, he did own these two bonds, and he still owned them when he died unless he parted with such ownership on the day last named.
*353 The court below held, under the evidence, that he did not part with such ownership, but that these bonds were a part of the estate left by him, and that the executors were entitled to the credit claimed by them for the delivery of these bonds to the trustee for the plaintiff in error.
Was there error in this holding?
At the time of his death these two bonds were in the testator’s house, and each had endorsed on it, in pencil in the handwriting of the testator, these words:
“This bond I give and set over to my daughter Marjorie Warner this 20 December, 1878. v E. O. Warner.”
The plaintiff in error, at the date of this endorsement, was but three years old, and, of course, was wholly unable to act for herself in accepting or taking the custody or control of any such property Jor herself, if it should be given to her.
That her father intended ihat this property should at some time belong to Marjorie is conceded by the defendants in error; but, they say that such intention wa3 carried out by the bequest in the foregoing part of the fourth item of his will, while, on the other hand, it is urged that he did, •on the 20th of December, 1878, actually transfer the present ownership of these bonds to the daughter. If he desired and intended so to transfer the ownership,it is difficult to think of any words which he could have used to express such intention, either concisely or elaborately, more clearly than those already quoted and as we find written by him on each bond.
But, something more than intention, however clearly expressed, is necessary.to constitute a gift of a chose in action, or of chattel property. There must be also a delivery of the thing donated.
Mr. T hornton, in his work on Gifts and Advancements, at paragraph 292, says:
“In all cases of a gift of a written chose in action, de *354 livery is as essential to the validity of the gift as the delivery of a chattel.”
Our own supreme court, speaking by Judge Brinkerhoff, in the case of Hamor v. Moore’s Adm’r, found in the 8. Ohio St. Reports, at page 242, uses this language:
“And to a valid gift inter vivos, delivery and acceptance, either actual, constructive, or symbolical, are everywhere’ held to be essential.”
In the case of Phipps v. Hope ‘Adm’r., et al., 16 Ohio St. Reports at page 586, the first paragraph of the syllabus, reads:
“To constitute a valid gift, either inter vivos or causa, mortis, a delivery, either actual, constructive, or symbolical, is essential.”
See also Flanders v. Blandy, 45 Ohio St. Reports, at page 108, and the opinion on page 113, where this language is-used:
“The donor must part not only with the possession, but with the dominion and control of the property.”
Thornton on Gifts, at page 181 says:
“In all gifts a delivery of the thing given is essential to. heir validity, for, although every other step be taken that is essential to the validity of the gift, if it was not delivered the gift must fail. Intention cannot supply it. Words-cannot supply it. Actions cannot supply it.”
Without further citation of authorities on this point, we regard it as settled law that no gift of these bonds, was or could be perfected without a delivery of them by the donor; such a delivery as took from him the dominion and control of' the bonds.
In paragraph 292, of Thornton on Gifts, from which a quotation has already been made in this opinion, this-further language is used:
“And the same rules applicable to a delivery of a chattel,, are applicable to a delivery of such chose in action”.
*355 And again:
“The delivery may be to a third person for the donee.’’
In paragraph 129, at page 104, the same writer, under the caption “Definition of Delivery”, says:
“The delivery of a chattel, in the instance of a gift, is-a transfer of possession, either by actual tradition from hand to hand, or by an expression of the donor’s willingness that, the donee should take the chattel when it is present, and in a situation to be taken by either party.”
Judge Dickman, in his opinion in Flanders v. Blandy, supra, says:
“Gifts inter vivos, like gifts causa mortis, are watched with caution by the courts, and to support them clear and convicting evidence is required.”
That case is familiar to the profession in Ohio, including counsel in this case, The court found that the bonds, which Blandy purchased as a gift for his daughter, were' never delivered to her or to any other person for her. They remained in the keeping of the father until he sold them to obtain money to put into a business enterprise, True, while he held the bonds, he collected the interest and paid' it to his daughter — he retained them in his possession at her request; but the court held that there was no delivery, constructive, or otherwise, of the bonds to the daughter, and it is in connection with the discussion of such a state of facts, that the language, quoted from the opinion, is used.
Thornton on Gifts, at paragraph 160, states clearly the' proposition:
“That the delivery of the thing given may be made to a. third person for the donee, and that if so made, under circumstances which indicate that the donor relinguishes all right to the possession and control of the thing given, with the intention to pass the present title in the donee, the gift will be sustained. ”
*356 And this is supported by numerous authorities cited in the notes under this section. As has already been said, words could not well have been used more effectually to declare that the bonds in question were, on the 20th of December, 1878, made the property of Marjorie O. Warner, than the words which were at that date written on each bond by Elbridge 0. Warner, and if this intention, thus unequivocally expressed, was followed by such a delivery of possession, custody and control as satisfies the requirements of the law for supporting a gift, then these bonds became then and there the property of Marjorie, and constituted no part of the estate left by Elbridge O. Warner at his death.
The fact that Mr. Warner was a man of very considerable means; that Marjorie was his only daughter, and his youngest child; that he had already aided each of his sons, certainly renders it by no means improbable that^he might make such a gift to his daughter, as she'here claims he did make.
In the writing on the bonds he says he does make this gift. If he undertook to carry out this purpose by delivery of the property to whom would we expect him to'make such delivery? The child could not be trusted with the manual possession of such property as this. The mother would seem to be the one who, above all others, it would be expected he would select as the custodian of the subject of the gift. Authorities are not wanting to the effect that in the case of an attempted gift by a parent to a child of such tender years as to be entirely unfit to have the custody of the subject of the gift, the retaining of such custody by the donor will not defeat the gift. See Hillebrant v. Brewer, 6 Tex., 24, and Ector v. Welch, 29 Ga., 443; surely then, the delivery by one parent to the other of property for their infant child, if accompanied by all the other elements necessary to constitute a valid gift, will be upheld as a valid gift.
*357 Without considering any evidence here, as to the competency of which there can be any question, we are satisfied that from the 20th of December, 1878, up to the time when Elbridge 0. Warner died in 1884, these bonds were in the custody and control of Marion E. Warner fo her daughter Marjorie, and that they were so placed in her custody by Mr. Warner at the date of the written transfer entered on the bonds.
It is said that it is improbable that she should have kept them, as she says she did, in the bureau drawer during all of these years, when, in the next room in the same house where she and her husband and their child lived, there was a good fire proof safe. And yet if she had placed them in this safe it might be urged with fully as much reason, that the fact of their being in the donor’s safe was evidence that the gift was never perfected by delivery. Mrs. Warner says she kept other valuable papers in this drawer, and that she kept money there, and we do not think there is any such improbability in these statements as to justify us in disbelieving her.
The fact, that after the death of her husband, when the executors were preparing for an appraisement of the estate, she produced these bonds from her bureau, we think, .is clearly established, She says so; Arthur Warner, one of the executors and a defendant here, pays so, and - Eugene, the other executor, says he does not remember that she did, and, in'answer to one question, says she did not; but it seems clear to us that his memory in this regard is at fault. It is hardly possible that both Mrs. Warner and Arthur should remember this alike, if nothing of the kind ever occurred, and surely there can be no suspicion of collusion between these two witnesses- — -their interests, or rather the interests of Mrs. Warner’s daughter and the interests of Arthur, are directly adverse to each other. It is much more probable that Eugene should be mistaken about this than *358 that both of the others should be, and we think it altogether consistent, with the entire honesty of purpose of all these parties, that Eugene should be mistaken in this, and also as to the time when he saw these bonds in his father’s safe. He undoubtedly did see them there after the safe was removed to his own house, and after the executors had taken possession of the bonds as a part of the estate. His recollection is that it was then that he first heard Mrs. Warner speak of their having been given to Marjorie. As already said, we think he is clearly mistaken as to his having then first heard this claim made by Mrs. Warner, and we think he is mistaken in saying, that after the 20th of December, 178, and before the death of his father, he saw them in the safe.
It is urged in argument that the conduct of Mrs. Warner in permitting these bonds to be taken by the executors without protest, was inconsistent with her claim now, that they were then the property of Marjorie, and especially that she should have made no claim to them during all the years that she was her daughter’s guardian — 'Something like nine years. We do not think so. She was not familiar, we may well presume, with legal principles, and . she was informed by one of the executors that the probate judge had told him that these bonds were what was meant by the second description of property named in the fourth item of the will. If these bonds were in Mrs. Warner’s possession at the time they were asked for by the executors, when they were preparing for the appraisement, as we find from the evidence they were, she either obtained them sureptitiously, or they were given into her keeping by her husband. If she obtained them surreptitiously, she did so with the dishonest purpose of making it appear that they were the property of her daughter, when, in fact, they were not, and we think her conduct thereafter is wholly inconsistent with such a hypothesis. It is hardly to be conceived that if she were *359 endeavoring to make the claim for these bonds, on behalf of her daughter, dishonestly, that she should have so readily given them over to the executors and acquiesced in what she was told the probate judge said as to theirf constituting a part of the testator’s estate. Rather we should look to see her persist in the fraudulent scheme'jwhich^'she had undertaken.
We hold, therefore, that the court below erred in finding that these bonds were a part of the testator’sjestate,and that the executors were entitled to charge them’j as a part of the ten thousand dollars bequeathed in trust for Marjorie in the fourth item of the will. But, if the executors ;are not to take credit for their delivery under the fourthutem of the will to Margorie’s trustee, neither are they to be£charged with them as a part of the estate. As the accounts were made up they are charged with them as]a part of|the estate, and credited with them as having been delivered to the trustee. It is manifest that so far as’jthe itenrof the bonds is concerned, as between the executors and the estate, the result will be the same if you charge therewith the bonds and credit them with paying them over to the trustee, or leave them out entirely of the accounts as should have been done, as we hold they were no part of the estate whatever.
Another error is claimed in the judgment of the court below, in allowing the executors credit for one thousand dollars paid to the trustee, ostensibly under the provision of that portion of the codicil which reads:
“And I do also hereby give and bequeath to my said daughter, Marjorie 0. Warner, in addition to the sums provided for her in my said will, one thousand dollars in money and the piano I now own.”
In the case already referred to between these same parties for the construction of this will and codicil, this court, at the present term, has held that the property mentioned in the clause just quoted, does not constitute an addition to the *360 trust fund provided for in the fourth item of the will, but constitutes a direct legacy to Marjorie, to be paid and delivered directly to her or her guardian.
The fourth item provides that the mother of Marjorie shall be the trustee, to hold the property therein bequeathed during Marjories’ minority. This trust Mrs. Warner declined to accept, and one Asa S. Stratton was duly appointed by the probata court as such trustee. He qualified, and payment was made by the executors to him in his said trust capacity.
Under our construction of item fourth of the will, as hereinbefore stated, there should have been delivered to this trustee the shares of bank stock named therein, and money or other property sufficient to make up the sum of ten thousand dollars, and, as we hold that the bonds were not a part of the testator’s estate, but were already the property of Marjorie, it follows that they cannot constitute a part of the said sum, but that, exclusive of said bonds, said full sum of ten thousand dollars should have been paid to him, The accounts and vouchers show that this was done. The executors claim credit for eleven thousand dollars delivered to this trustee, and this under their mistake in supposing that the bequest named in the codicil was to be treated as an addition to the trust estate named in item four, thus making the trustee entitled to eleven thousand dollars, and the further mistake that the bonds were to be treated as a part of the bequest of ten thousand dollars, The bonds should never have been delivered to the trustee. The mother, though declining the trusteeship, was appointed and qualified as guardian of Marjorie, and she should have held these bonds as such guardian; but, no harm has come to Marjorie by their having been placed in the hands of Stratton. She has had all the interest accruing upon them, and when she reached her majority the bonds were delivered to her. So far then as her interests *361 are concerned, it is matter of indifference in whose custody the bonds were kept during her minority.
Under item fourth of the will, as has already been said, without any reference to these bonds, ten thousand dollars should have been turned over by the executors to the trustee. That sum was turned over by them to him, and since he received the right amount, it is wholly indifferent that both he and the executors supposed he was getting but nine thousand dollars under item four, and that the remaining one thousand dollars was paid to him under the codicil. He should have received in all, as this trust fund, ten thousand dollars. He did receive that amount, and there was no error in holding that the executors were entitled to credit for paying it to him; but, there was and is error in the record and judgment of the court below, in holding that one thous- and dollars of the sum paid said trustee was in payment of the one thousand dollars bequeathed to said Marjorie by the codicil. The court should have held, as hereinbefore indicated, that though the right amount had been paid to said trustee, such payment only satisfied the bequest in the fourth item of the will, and that the one thousand dollars bequeathed by said codicil, and which should have been paid to her guardian, has never been paid to anyone, and is still due from the executors to Marjorie, together with interest computed from a day one year after the letters testamentary were issued. For authorities as to the time from which interest is to be paid, see citations in Case School, etc., v. Gray et al., 15 Circuit Court Reports, 492, and Wheeler v. Hathaway et al., 54 Mich., 547.
It will be seen that, under this decision so far as questions are made before us, the executors’ accounts require correction, in addition to such corrections as were ordered to be made by the court of common pleas, to the extent of making payment to the plaintiff in error of this bequest of one thousand dollars, with interest, made in the codicil, *362 thus reducing the amount to be distributed under the residuary clause by that sum. As to the one thousand dollars which the executors permitted the widow to hold as a gift to her, without reviewing the evidence, we hold that there was no error in the judgment of the court of common pleas. That one thousand dollars was properly paid to the widow, or, rather, properly treated as having belonged to her before her husband’s death.
The residuary clause of this codicil, so far as attention need be called to it here, reads:
“The surplus shall be divided equally between my sons Eugene N. Warner and Arthur E. Warner, and my daughter Marjorie 0. Warner.’’
The practical operation, therefore, of our holding, will result in the paying by the executors of two-thirds of the amount now due on this bequest of one thousand dollars, and taking no credit therefor, or, paying the entire amount to Marjorie and taking credit therefor, and so divide as a residuum that much less. The amount which each will receive in either case will be the same That is to say, if they pay to Marjorie the one thousand dollars, with the interest on it, and deduct it, and after such deduction determine the residuum and divide that residuum by three, giving to Marjorie one-third and taking each for himself one-third, or, if they simply hand over to Marjorie, without taking any credit for it, two-thirds of that one thousand dollars, with its interest, the result will be exactly the same.
We have before us all of the evidence upon which the court of common pleas acted, and, finding as we do that this judgment should be in part reversed, and having authority, under Revised Statutes, sec. 6726, to render the judgment which that court should have rendered, we here render judgment correcting the judgment of the court below, as indicated in this opinion, and remand the case to *363 that court to carry such judgment into execution, the same as though this judgment had been entered in that court.
Horace Alvord, William E. Cushing and A. C. Pepoon, for Plaintiff in Error.
Géo. H, Shepherd, A. G. Reynolds and George W. Alvord, for Defendant in Error,
Being persuaded, as we are by the examination of this record, that the executors, the guardian, Marion E. Warner, and the plaintiff in error, have all acted in this matter in good faith, and allowing for that frailty in human nature which generally causes each to give himself the benefit of every doubt, that all have acted honestly, we deem it just, and therefore order, that the costs of this proceeding be paid by the executors out of the estate of the testator,